M. C. PROPST, ADMINISTRATOR, ET ALS. v. LIZZIE CALDWELL ET ALS.

(Filed 29 November, 1916.)

**1. Partition—Title—Judgments—Estoppel.**

While ordinarily the title to lands is not adjudicated in proceedings to partition them, it may be put at issue by a party thereto properly pleading it; and where the lands are ordered to be partitioned, reserving the question of title, and a final judgment entered, adjudicating it, the judgment so entered will operate as an estoppel in another and independent action between the parties and privies calling it into question.

**2. Judgments—Estoppel—Parties—Privies.**

Judgments and decrees of court regularly entered will conclude parties and privies as to all issuable matter contained in the pleadings, or other matter within the scope thereof, though not issuable in a technical sense, if they are material and relevant or are in fact investigated and determined.

**3. Partition—Judgments—Estoppels—Wills.**

Where in proceedings to partition lands the question as to whether certain devises under the terms of a will were entitled to their part of the lands or its proceeds, or whether they were to be held in trust for them, has properly been put in issue and determined by final judgment therein, it is *Held*, that the parties and privies thereto are estopped in an independent action to question the correct interpretation of this clause of the will.

CIVIL ACTION tried before *Carter, J.,* at April Term, 1916, of MECK-LENBURG.

This is a proceeding to sell land for partition.

The land described in the petition and other lands formerly belonged to J. D. Caldwell, who died intestate prior to 1881, leaving several children as his heirs at law, and among them R. C. Caldwell and John M. Caldwell.

In 1881 R. C. Caldwell died leaving a will, the material parts of which are as follows:

"Item 1st. It is my will that all my just debts and funeral expenses be paid by my executor as soon after my decease as practicable.

"Item 2d. I will to each of my brothers and sisters the sum of $1.

"Item 3d. I will to my namesake, Walter Calvin Caldwell (my brother John's son), a good collegiate education, all the expenses of said education to be paid for out of any property of which I may die possessed of.

"Item 4th. I will that all my property, real and personal, be used by my executor in educating my brother John's children; that is, all that is not needed to educate my namesake above mentioned, he to have the preference.

"Item 5th. I will that my executor furnish to my mother the same amount of living I have been in the habit of doing yearly, and that left to his judgment.

"Item 6th. I will that my executor have the power to use all of my estate, real and personal, for the best interest in educating his children.

"Item 7th. I will to my nephew D. G. Caldwell $100 to be used in buying books for his profession.

"Item 8th. I do hereby constitute and appoint my brother John M. Caldwell my lawful executor to execute this my last will and testament

according to the true intent and meaning of the same. Given under my hand and seal this the 9th day of July, 1881."

In 1883 a proceeding was commenced for the partition of all the lands of J. D. Caldwell among his heirs, in which the parties under whom the plaintiffs in this proceeding claim were plaintiffs, and the children of J. M. Caldwell, the defendants in this proceeding, and J. M. Caldwell, were defendants.

It is alleged, among other things in the petition of 1883, "That in October, 1881, R. C. Caldwell died in the county of Cabarrus, State aforesaid, first having made and published a last will and testament, by which said will he gave his undivided interest in the aforesaid tract of land to the infant defendants, Walter C., S. L., D. C., M. L., L. A., F. V., J. L., and J. M. Caldwell, to be applied first to the education of the said Walter C. Caldwell, and any balance or remainder of said undivided interest in said real estate to be equally divided between the other infant defendants above named," and further, "and Walter C. Caldwell and the seven other infant defendants are entitled to five twenty-eighths of the whole of said estate." These last were the children of J. M. Caldwell.

The guardian *ad litem* for the children of J. M. Caldwell filed an answer to this paragraph of the petition as follows:

"Second. That the allegation in the fourth section, that after the education of the defendant Walter C. Caldwell the balance of the said interest is to be divided among the other infant defendants, is not true; but, on the contrary, this defendant avers that he is advised that by a proper construction of the said will of R. C. Caldwell, deceased, J. M. Caldwell, the father of said infant defendants, is constituted a trustee of the said property with instructions to apply the same to the education of his said children, the said Walter C. Caldwell having always the preference."

The said J. M. Caldwell, who was a defendant, and who is now dead, filed answer to the petition as follows:

"J. M. Caldwell, Sr., defendant in the above action, answering the complaint, says:

"First. That the facts set forth in the said complaint are true with the exception of the allegations of the fourth section as to the disposition made by the will of R. C. Caldwell, deceased, and as to these allegations he submits the same to the judgment of the court upon inspection of the said will."

In October, 1883, an order was made in said proceeding appointing commissioners to divide the lands, but providing therein: "That the question as to the rights of the infant defendants under the will of R. C. Caldwell, deceased, be and the same is reserved by the court for further consideration."

The commissioners made report in which the land described in this action was allotted to the defendants in this action and to those under whom they claim, and a final decree was entered confirming the report.

The defendants in this action pleaded the partition proceeding of 1883 as an estoppel.

His Honor sustained the plea, and the plaintiffs excepted and appealed from the judgment rendered in favor of the defendants.

*Maness & Sherrin, M. H. Caldwell, and W. G. Means for plaintiffs. H. S. Williams and Stewart & McRae for defendants.*

ALLEN, J.  The effect upon the title of a decree in partition proceedings was considered in the concurring opinion in *Weston v. Lumber Co.,* 162 N. C., 180, which was afterwards adopted as the opinion of the Court, *Weston v. Lumber Co.,* 169 N. C., 403, and the following conclusions were reached:

"1. That at common law, as the only unity between tenants in common was one of possession, the judgment in partition had no effect except to sever the possession, and did not operate upon the title.

"2. That at common law and now, partition may be had of estates less than a fee simple.

"3. That statutes have been passed in the different States which authorize an adjudication of title in partition proceedings.

"4. That under the statutes of this State, as they exist now, persons 'claiming real estate as tenants in common' may have partition; that upon a petition being filed, the court may appoint commissioners 'to divide and apportion such real estate among the several tenants in common'; that the commissioners shall partition the land 'among the tenants in common according to their respective rights and interests therein, by dividing the land into equal shares in point of value as near as possible,' and shall make report, which, when confirmed, 'shall be binding among and between the claimants, their heirs and assigns.'

"5. That when title is put in issue under the statute, the judgment is an estoppel as to that title."

We also quoted from Mr. Freeman, the author of the Work on Cotenancy and Partition, as follows:

"We have hereinbefore shown that, in many of the States, title may be put in issue and determined in suits for partition.  We may assume that, even in those States, the title is not put in issue merely by the allegations necessary for a declaration in partition at common law, and that where nothing is known about the pleadings in such a suit, it will be presumed that title was not put in issue by them, nor determined in any judgment based on them.  We apprehend, however, that whenever plaintiff alleges himself to be the owner in fee, or of any specified estate, or avers any other ultimate fact under which he is entitled to relief, it

becomes the duty of defendant either to concede or take issue with the allegation or averment, and that the judgment in the action will be as conclusive as it would be upon a like issue in any other action."

It is also held with reference to judgments and decrees in other actions and proceedings, that they conclude parties and privies as to all issuable matter contained in the pleadings, and as to other matters within the scope of the pleadings, although not issuable in the technical sense, if they are material and relevant and are in fact investigated and determined. *Tyler v. Capehart,* 125 N. C., 64; *Coltrane v. Laughlin,* 157 N. C., 282; *Ferebee v. Sawyer,* 167 N. C., 203; *Cropsey v. Markham,* 171 N. C., 45.

Applying these principles, we are of opinion the decree in the partition proceeding of 1883 operates as an estoppel and is a bar to the further prosecution of this proceeding.

The plaintiffs and the defendants in this proceeding are either parties or privies to the proceeding of 1883; they occupy the same relative position as plaintiffs and defendants, and the same tract of land is involved in each.

In the petition of 1883 it is alleged that R. C. Caldwell, one of the heirs of J. D. Caldwell, had died leaving a will by which he gave his undivided interest in the lands of his father to the children of J. M. Caldwell, who were parties and who represented the defendants in this proceeding.

This allegation was denied in the answer of the guardian *ad litem,* and in the answer of J. M. Caldwell the question is submitted to the court for decision "upon inspection of said will."

The construction of the will of R. C. Caldwell, and the title of the children of J. M. Caldwell thereunder, were therefore directly in issue in the proceeding of 1883, and while the question was reserved at the time the order appointing commissioners to divide the lands was made, it was reserved "for further consideration," and when the final decree was entered it adjudged the title to the land in controversy to be in the defendants, which could not have been done without adopting the construction of the will of R. C. Caldwell for which the plaintiffs then contended, and which they now seek to repudiate.

The question of the correctness of this construction is not before us, because, as was said of a decree construing a will in a partition proceeding in *Weeks v. McPhail,* 128 N. C., 131: "The decree was not appealed from and is an estoppel upon the parties thereto and those claiming under them, though it may be erroneous in law (*Silliman v. Whitaker,* 119 N. C., 89) in the construction thus placed upon the terms of the devise."

We are therefore of opinion that the ruling of his Honor ought to be approved and the judgment affirmed.

Affirmed.