An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-628

NORTH CAROLINA COURT OF APPEALS

Filed: 21 January 2014

MICHAEL DAVID BLAND, in his
capacity as Collector of the
Estate of Audree Shore Mills,

        Plaintiff,

    vs.

Harold L. and Audree S. Mills
Charitable Remainder Unitrust;
Fletcher L. Hartsell, Jr., in his
capacity as Trustee of the Harold
L. and Audree S. Mills Charitable
Remainder Unitrust and as Manager
of H&A Mills Properties, LLC; H&A
Mills Properties, LLC; The Estate
of Harold L. Mills; Edmond Thomas
Hartsell, individually and his
capacity as Executor of the Estate
of Harold L. Mills; and McGill
Baptist Church of Concord, North
Carolina, Inc.

        Defendants.

Cabarrus County
No. 08-CVS-3379

 

Appeal by Plaintiff from order entered 26 November 2012 by Judge Richard L. Doughton in Cabarrus County Superior Court. Heard in the Court of Appeals 21 October 2013.

> *Weaver, Bennett & Bland, P.A., by Michael David Bland, for Plaintiff.*

*Poyner Spruill LLP, by Cynthia L. Van Horne and E. Fitzgerald Parnell, III, for Fletcher L. Hartsell, Jr., in his capacity as Trustee of the Harold L. and Audree S. Mills Charitable Remainder Unitrust and as Manager of H&A Mills Properties, LLC.*

*Orsbon & Fenninger, LLP, by R. Anthony Orsbon, for the Estate of Harold L. Mills and Edmond Thomas Hartsell, individually and in his capacity as Executor of the Estate of Harold L. Mills*

*James, McElroy & Diehl, P.A., by John S. Arrowood and Edward T. Hinson, Jr., for McGill Baptist Church of Concord, North Carolina, Inc.*

DILLON, Judge.

Michael David Bland (Plaintiff), in his capacity as Collector of the Estate of Audree Shore Mills, appeals from the trial court's order granting summary judgment in favor of Defendants Harold L. and Audree S. Mills Charitable Remainder Unitrust; Fletcher L. Hartsell, Jr., in his capacity as Trustee of the Harold L. and Audree S. Mills Charitable Remainder Unitrust and as Manager of H&A Mills Properties, LLC; H&A Mills Properties, LLC; the Estate of Harold L. Mills; Edmond Thomas Hartsell, individually and in his capacity as Executor of the Harold L. Mills Estate; and McGill Baptist Church of Concord, North Carolina, Inc. (collectively, Defendants). For the following reasons, we reverse and remand for further proceedings consistent with this opinion.

## I. Factual & Procedural Background

Audree Shore Mills suffered three strokes between 1996 and 2002, rendering her physically and mentally impaired and in need of a full-time caretaker. She executed a durable power of attorney instrument in 1996 (the 1996 POA), appointing her husband, Harold Mills, as her attorney-in-fact[1]; however, as discussed further *infra*, the 1996 POA was not recorded until approximately thirteen years later, three hours before the hearing on Plaintiff's motion for summary judgment in the present action.

In 2003, Defendant Fletcher Hartsell, Jr. (Attorney Hartsell), began serving as legal counsel to both Mr. and Mrs. Mills. Plaintiff avers that friends and family members expressed their concerns to Attorney Hartsell about Mrs. Mills' deteriorating physical and mental health on "numerous occasions" around this time. In October 2003, Attorney Hartsell helped Mrs. Mills execute a power of attorney instrument (the 2003 POA), in which Mrs. Mills appointed Ray White as her attorney-in-fact. The 2003 POA was properly filed with the Cabarrus County Register of Deeds on 20 October 2003.

In September 2005, Mr. Mills' nephew, William L. Mills,

---

[1] The 1996 POA also designated Central Carolina Bank and Trust Company as an alternate attorney-in-fact for Ms. Mills.

III, filed petitions requesting that both Mr. and Mrs. Mills be declared incompetent and appointed guardians. Attorney Hartsell filed an answer on behalf of Mr. and Mrs. Mills requesting that the petitions be dismissed.

On 28 December 2006, Attorney Hartsell and his brother, Thomas Hartsell, purportedly helped Mr. and Mrs. Mills form H&A Mills Properties, LLC (H&A Mills). Mr. Mills signed the H&A Mills operating agreement on behalf of himself and, additionally, on behalf of Mrs. Mills as her attorney-in-fact pursuant to a limited power of attorney executed and recorded on 21 June 2005. Attorney Hartsell prepared and recorded two deeds that transferred to H&A Mills interests in numerous tracts of real property (the Real Estate) owned by Mr. and Mrs. Mills.

On 9 February 2007, the Harold L. and Audree S. Mills Charitable Remainder Unitrust Agreement (the Trust) was created. Mr. and Mrs. Mills were the named grantors of the Trust and Attorney Hartsell was designated its trustee. The initial corpus of the Trust consisted of a 100 percent ownership interest in H&A Mills, and the Trust's terms provided for quarterly distributions to each Mr. and Mrs. Mills in an "amount equal to six and one-half percent (6.5%) of the net fair market value of the assets of [the Trust]" for the remainder of their

lives. The Trust's terms further provided that upon the death of the survivor of Mr. and Mrs. Mills, the entire balance of the Trust's assets would pass to McGill Baptist Church.

In February 2008, approximately one year after the Trust was created, Mr. Mills died. On 1 May 2008, Mrs. Mills was adjudicated incompetent by the Cabarrus County Clerk of Superior Court. Ray White was appointed Guardian of Mrs. Mills' estate and, acting in his Guardianship capacity, filed a complaint commencing the present action against Defendants on 9 September 2008. In the complaint, Mr. White seeks, *inter alia*, a judicial decree invalidating the Trust, the effect of which would divest McGill Baptist Church of its remainder interest in the Real Estate held by the Trust and would return ownership in the Real Estate to Mrs. Mills and the estate of her deceased husband. The complaint alleges, *inter alia*, breach of fiduciary duties, exercise of undue influence, conversion of personal property, and unjust enrichment. Further, the complaint asserts that all distributions received by Mrs. Mills from the Trust were accepted by her with a reservation of rights to sue for the Trust's contents in their entirety. Mr. White subsequently moved for summary judgment with respect to six of the ten claims for relief asserted in the complaint.

On 14 December 2009, less than three hours prior to the hearing on Mr. White's partial motion for summary judgment, Defendants filed a copy of the 1996 POA with the Cabarrus County Register of Deeds. Mr. White objected to this filing at the summary judgment hearing, and the trial court took the matter under advisement.

Mrs. Mills died on 29 January 2010. Shortly thereafter, Defendants moved to dismiss the complaint filed by Mr. White on grounds that, in light of Mrs. Mills' death, Mr. White no longer had standing to maintain this action.

On 5 March 2010, the court denied Mr. White's motion for partial summary judgment and granted summary judgment in favor of Defendants, effectively dismissing all of the claims brought by Mr. White on behalf of Mrs. Mills. In its order, the court concluded that the 1996 POA had been "duly and properly recorded" and that Mr. Mills had acted within the scope of his authority as Mrs. Mills' attorney-in-fact when he conveyed the 100 percent ownership interest in H&A Mills to the Trust.

On 17 June 2011, Attorney Michael David Bland (Attorney Bland) was appointed collector of Mrs. Mills' estate. Attorney Bland filed a motion pursuant to Rule 25 of the North Carolina Rules of Civil Procedure to substitute himself as Plaintiff in

the present action, and the court granted the motion.

Attorney Bland appealed the 5 March 2010 summary judgment order dismissing Plaintiff's claims to this Court. Without reaching the merits of Plaintiff's appeal, we vacated the summary judgment order on grounds that it had been entered when Mr. White was no longer authorized to maintain Plaintiff's lawsuit, and we remanded to the trial court "for the court's consideration of those issues, if any, presented by Mr. Bland, as Collector of Mrs. Mills' Estate." *White v. Harold L. & Audree S. Mills Charitable Remainder Unitrust*, __ N.C. App. __, __, 730 S.E.2d 213, 217 (2012).

On remand, Defendants filed a new motion for summary judgment, this time contending that, in light of the fact that Mrs. Mills had received distributions from the Trust, Plaintiff was barred from seeking invalidation of the Trust under the doctrine of quasi-estoppel. The trial court granted Defendants' motion for summary judgment by order entered 26 November 2012. From this order, Plaintiff appeals.

## II. Analysis

A motion for summary judgment is appropriately granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2011). "The burden is on the moving party to show the absence of any genuine issue of fact and his entitlement to judgment as a matter of law." *In re Will of Lamanski*, 149 N.C. App. 647, 649, 561 S.E.2d 537, 539 (2002).

Plaintiff contends that the trial court erred in granting Defendants' motion for summary judgment under the theory of quasi-estoppel. We agree.

"Quasi-estoppel is based on a party's acceptance of the benefits of a transaction, and provides where one having the right to accept or reject a transaction or instrument takes and retains benefits thereunder, he ratifies it, and cannot avoid its obligation or effect by taking a position inconsistent with it." *Parkersmith Props. v. Johnson*, 136 N.C. App. 626, 632, 525 S.E.2d 491, 495 (2000) (alteration removed and quotation marks omitted). "The 'essential purpose' of the quasi-estoppel theory is to prevent a party from benefitting by taking two clearly inconsistent positions." *Beck v. Beck*, 175 N.C. App. 519, 523, 624 S.E.2d 411, 414 (2006) (citation omitted). Nevertheless, "'[o]ne cannot be estopped by accepting that which he would be

legally entitled to receive in any event.'" *Lamanski*, 149 N.C. App. at 651, 561 S.E.2d at 540 (quoting *In re Peacock's Will*, 18 N.C. App. 554, 556, 197 S.E.2d 254, 255 (1973)).

We find the factual circumstances and this Court's holding in *Peacock*, 18 N.C. App. 554, 197 S.E.2d 254, instructive in our disposition of the present appeal. In *Peacock*, the son challenged his mother's will, alleging that his sisters had exerted undue influence over the purportedly mentally incapacitated mother. *Id.* at 555, 197 S.E.2d at 255. The sisters pointed out that the son had accepted a distribution of $564.27 under the will and argued that he was, therefore, "estopped to question the validity of said will by virtue of his participation in the benefits arising to him under said will." *Id.* The trial court agreed with the sisters and concluded "as a matter of law that the acceptance and cashing of the check was a 'ratification, affirmation, and approval' of the validity of the will and that [the son was] 'estopped from contesting the validity thereof[.]" *Id.* at 556, 197 S.E.2d at 255. On appeal, this Court reversed the trial court's ruling, holding as follows:

> Under certain circumstances, one who accepts and retains benefits under a will may thereby become estopped to attack its validity. Such is not the present case. One

cannot be estopped by accepting that which he would be legally entitled to receive in any event. Should the will be set aside in the present case, appellant will be entitled to a full one-third of his mother's estate. His acceptance of a check for less than that amount could in no way prejudice his sisters in [the] event probate of the will is subsequently set aside. Nothing in the circumstances indicates any reason why it would by [sic] inequitable for appellant to proceed with his caveat. Should he succeed, he will ultimately receive no more than the law will allot him; should he fail, he will receive no more than the trustees in proper performance of their duties under his mother's will may distribute to him.

*Id.* at 556, 197 S.E.2d at 255 (internal citations omitted).

We must determine in the present case whether the trial court correctly concluded that Plaintiff was estopped from contesting the validity of the Trust – and thus barred from asserting the claims set forth in his complaint – in light of the quarterly distributions that Mrs. Mills received from the Trust. Put another way, Plaintiff's appeal hinges on whether the trial court correctly concluded *as a matter of law* that the Trust had conferred upon Mrs. Mills a benefit that exceeded that to which she would have been legally entitled had the Trust never been created. *See id*; *Lamanski*, 149 N.C. App. at 651, 561 S.E.2d at 541 (holding that beneficiary was estopped from contesting will where she "had no legal right, outside the will,

to the specific personal property which she received and retained pursuant to the specific bequest in [the] will"); *In re Will of Smith*, 158 N.C. App. 722, 724-25, 582 S.E.2d 356, 358 (2003) (holding that trial court erred in granting summary judgment based on estoppel where caveator received and accepted decedent's vehicle under challenged will, but, as decedent's only child, would have inherited decedent's entire estate, including the vehicle, absent the will).

Here, the evidence presented at trial tended to show that Mrs. Mills contributed assets to the Trust totaling $541,491.50 in value and that she received distributions from the Trust totaling $487,618.63. The evidence also indicated that $25,538.74 was distributed from the Trust to maintain the Trust-owned residence in which Mrs. Mills resided until her death and to cover expenses such as Mrs. Mills' car insurance and transportation for her caretakers, and that, additionally, Mrs. Mills enjoyed a $28,859.00 benefit in living in the aforementioned residence rent-free. Defendants aver that when "[c]omparing these additional payments and direct distributions to Mrs. Mills with the appraised value of Mrs. Mills' contributed assets, she received at least $554.87 more in distributions from the [Trust] than her contributions to H&A

Mills Properties, LLC. Defendants also assert that the Trust afforded Mrs. Mills "significant tax advantages" and that invalidation of the Trust would result in a tax liability of $822,330.00. Finally, Defendants argue that Plaintiff's failure to introduce any evidence concerning her legal entitlement to the Trust's assets if the Trust were invalidated – aside from the amounts that she contributed, which Defendants insist she surpassed by $554.87 – distinguishes this case from those in which this Court has declined to apply estoppel in light of evidence presented by the beneficiary indicating that she had received less than that to which she would otherwise be legally entitled.

We conclude that summary judgment here was improper in light of the evidence before the trial court. In moving for summary judgment, it was *Defendants* burden to prove that quasi-estoppel applies. *Lamanski*, 149 N.C. App. at 649, 561 S.E.2d at 539. Even assuming *arguendo* that Defendants' evidence was sufficient to shift the burden onto Plaintiff, *Williams v. Smith*, 149 N.C. App. 855, 857, 561 S.E.2d 921, 923 (2002) (providing that "[i]f the moving party has established the lack of a genuine issue of material fact, then the burden shifts to the non-moving party to present his own forecast of evidence to

show that a genuine issue of material fact does exist"), there was uncontested evidence before the court that Mrs. Mills was Mr. Mills' spouse at all times relevant to this action. As such, absent the Trust – or a will, or some other means of altering the statutorily prescribed consequences triggered by Mr. Mills' death – Mrs. Mills would have been entitled to her elective share of Mr. Mills' estate under N.C. Gen. Stat. § 30-3.1(a), which, as applied here, would have entitled Mrs. Mills to half of Mr. Mills' estate. N.C. Gen. Stat. § 30-3.1(a) (2008) (providing that where "the decedent is not survived by any lineal descendants, [the surviving spouse is entitled to an elective share of] "one-half of the [defendant's] Total Net Assets"). No will or other evidence was presented to indicate that Mrs. Mills would not have been entitled to at least her elective share in Mr. Mills' estate, which would have easily surpassed in value any economic benefit conferred upon Mrs. Mills by the Trust.

With respect to Defendants' contention that the present case is distinguishable from those in which we have refused to apply the quasi-estoppel doctrine in light of Plaintiff's lack of evidence concerning her legal entitlement, we note that the trial court's determination in *Peacock*, *supra*, that the

beneficiary was entitled to one-third of his mother's estate absent the contested will, 18 N.C. App. at 556, 197 S.E.2d at 255, was readily discernable by reference to the then-existing intestacy provisions; and there is no indication that the court made this determination based on evidence presented by the parties themselves. *See id.* We also note that our present holding is in accord with that of a Florida appellate court that, citing North Carolina case law, recently addressed this precise issue under similar circumstances in *Fintak v. Fintak*, 120 So.3d 177 (Fla. 2nd DCA 2013).[2]

In sum, we conclude that the trial court erred in granting summary judgment for Defendants in light of Mrs. Mills' legal entitlement to at least her elective share of Mr. Mills' estate. We instruct the trial court on remand to determine the extent of

---

[2] We recognize that state court decisions from other jurisdictions serve as persuasive, but not binding authority on this Court. *Morton Bldgs., Inc. v. Tolson*, 172 N.C. App. 119, 127, 615 S.E.2d 906, 912 (2005). The trial court in *Fintak* granted summary judgment to the defendants on grounds that the plaintiff was estopped from asserting claims of undue influence and lack of testamentary capacity relating to the trust in question because the plaintiff had received and accepted disbursements from the trust. *Id.* at 184. Citing this Court's decisions in *Smith* and *Peacock*, *supra*, the *Fintak* court reversed the trial court's decision, holding that the doctrine of quasi-estoppel did not apply because the beneficiary "would have been legally entitled to the assets of the Trust if the Trust was never created and in the event the Trust is declared invalid." *Id.* at 185.

Mrs. Mills' entitlement and whether, considering this entitlement, the benefits conferred upon Mrs. Mills by the Trust exceeded such entitlement. Defendants are at liberty to introduce rebutting evidence, i.e., evidence demonstrating that Mrs. Mills was not so entitled, if any such evidence exists. Accordingly, we reverse the trial court's 26 November 2012 order and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Chief Judge MARTIN and Judge BRYANT concur.

Report per Rule 30(e).